UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ERNEST FRANKLIN CLARK,

        Plaintiff,

v.                                                      Case No. 5:03-cv-202-Oc-10GRJ

BRIAN ARGUTTO, et al.,

        Defendants.

_____

## <u>ORDER</u>

Plaintiff initiated this case by filing a Civil Rights Complaint pursuant to 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  In an order dated March 28, 2005, this Court granted in part and denied in part Defendants' Motion for Summary Judgment. (Doc. 75).[1]  As a result, the claims remaining in this case are as follows: (1)  Plaintiff's claim that excessive force was used after the initial application of hand restraints; (2) Plaintiff's claim that the Defendants were deliberately indifferent to his serious medical needs in the treatment of his left wrist;  (3)  Plaintiff's claim that the Defendants were deliberately indifferent to his serious medical needs in denial of pain medication; and (4) Plaintiff's claim that his due process rights were violated when his prison funds were misappropriated.  The remaining Defendants are:  Mark Anderson, former Lieutenant; Brian Ward, corrections officer; Dennis Johnson,

---

[1]See Doc. 75, pgs. 2-8 for a summary of Plaintiff's complaint.

Associate Warden; Steve Jenkins, Captain; Scott Lyngaas, Lieutenant; Felix Berrios, Intelligence Officer; Vincent Soto, SIS Technician; Eugene Nabritt, Education Technician; Barbara McInturff, Unit Manager; Norman Villanueva, Counselor; Robert Shank, Counselor; Mariano Perez[2], Lieutenant; and Manny Coll, Health Services Administrator.

Now before the Court is the remaining Defendants' "Second Motion to Dismiss, or Alternatively, Motion for Summary Judgment." (Doc. 97). Because the Defendants' motion is supported by declarations and other documents, the Court will construe the motion as one of summary judgment.

## Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty

[2]Defendants contend that Defendant Perez is not before the Court. (Doc. 97, pgs. 8-9). The Court notes that the record contains proof of service for Mariano Perez. (Doc. 72). Further, on February 25, 2005, Defendant Perez filed a motion for summary judgment which was incorporated into the Defendants' consolidated motion. (Docs. 73, 75).

Lobby, 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  Celotex, 477 U.S. at 323.  If the Court finds that the movant has satisfied the initial burden, the burden shifts to the non-moving party to provide sufficient evidence of every element he or she is required to prove at trial.  Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (1993), *reh'g and reh'g en banc denied*, 16 F.3d 1233 (11th Cir. 1994).  If the party who has the burden of proof at trial fails to establish even one essential element of the case, "there can be no genuine issue as to any material fact" because the failure to establish one essential element "renders all other facts immaterial."  Celotex, 477 U.S. at 322-23.  The nonmoving party must go "beyond the pleadings, [and show] that there exist genuine issues of material fact."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## Cruel and Unusual Punishment Claim

The core judicial inquiry in examining a claim of excessive force by an inmate is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. "  Hudson v. McMillian, 503 U.S. 1, 6 (1992).  The following are five factors relevant in determining whether  the force was used maliciously or sadistically: "(1) the extent of the injury;  (2) the need for the application of force;  (3) the relationship between that need and the amount of force

used;  (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them."  Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999).  Additionally, "the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law" is that:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (*quoting* Whitley v. Albers, 475 U.S. 312 (1986)).

Applying these factors to this case, the Court finds that Defendants are entitled to judgment as a matter of law as to Plaintiff's claim that excessive force was used after the initial application of hand restraints.  Although the absence of a serious injury is relevant to this claim, it does not end the analysis.  See Harris v. Chapman, 97 F.3d 499, 505 (11th. Cir. 1996).  As stated in the Court's previous Order of March 28, 2005, the staff had no idea why Plaintiff could not successfully pass through the metal detector and whether or not Plaintiff may be a danger to himself, other inmates, or staff.  In addition, Plaintiff was given the option of voluntarily submitting to hand restraints and peaceable walking to the lieutenant's office, yet he refused.  The Court is persuaded by Defendants' motion in that:

> the immediate response to the situation spanned from the time the inmate disobeyed a direct order of the corridor officer, through the initial application of both hand and leg restraints, through his escort off the compound, through

the Lieutenant's office, and into the SHU, until the situation was adequately de-escalated such that the Lieutenant authorized staff to release the inmate while in the holding cell in the SHU.

(Doc. 91, pg. 5;).  <u>See</u> <u>also</u> Declaration of Defendant Ward, Doc. 97-3.

Defendants provide evidence that "demonstrates that Plaintiff was in handcuffs which were allegedly too tight for less than fifteen minutes."  (Doc. 91, pg. 9-12; Ex. 2).  Plaintiff does not reasonably dispute this evidence.  "It is true that on a motion for summary judgment, all reasonable inferences must be made in favor of the non-moving party."  <u>Cuesta v. School Bd. of Miami-Dade County</u>, 285 F.3d 962, 970 (11th Cir. 2002)(citations omitted).  "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, an upon which the non-movant relies, are "implausible."  <u>Id</u>.

The evidence shows that on May 1, 2002, staff requested assistance with Plaintiff at approximately 8:50 a.m.  Defendants have submitted the SHU entry log which evidences that on the day of the incident, Plaintiff first entered the SHU at 9:05 am.  (See Docs. 97-7, 97-8).  Therefore, the entire incident, from the first call for assistance to Plaintiff's placement in SHU was approximately fifteen minutes.  Plaintiff states that upon placement in the SHU, his hand restraints were loosened.  Therefore, it is simply not plausible that Defendant Ward tightened Plaintiff's hand restraints in the lieutenant's office for twenty minutes, as Plaintiff maintains.  The Court finds that based on the record before the Court, Defendants have presented evidence which refutes Plaintiff's claim that excessive force was used after the initial

5

application of hand restraints.

## Deliberate Indifference Claims

Medical records submitted by Defendants show that Plaintiff was evaluated on May 1, 2002 but Plaintiff did not complain about his hand restraints or his wrist at this time.  Medical staff noted no bleeding or swelling, but multiple abrasions were observed.  (Docs. 97-4,  97-9).  Plaintiff maintains that he advised medical staff that his left wrist was swollen and numb and that he had no feeling on the left side of his left hand.  Plaintiff states that on May 13, 2002, he received an examination from the medical department but states he has not yet received treatment and he continues to feel pain, numbness and stinging in his left hand and wrist.[3]

According to Plaintiff's complaint, Dr. Green saw Plaintiff on May 14, 2002 and noted Plaintiff had a pinched nerve but did not prescribe pain medication for Plaintiff.  The next day Dr. Shim saw Plaintiff and Plaintiff underwent an X-ray which revealed that Plaintiff did not have a pinched nerve.   Dr. Shim did not prescribe pain medication.[4]   On September 17, 2002, Plaintiff's wrist underwent a MRI which revealed "the possible presence of a small ganglion."[5]  On April 18, 2003, medical staff advised Plaintiff that there was no treatment or cure for a small ganglion.[6]

---

[3]See Plaintiff's declaration, Doc. 42, pg. 70, paragraphs 45-55.

[4]Doc. 1, paragraphs 88-89.

[5]Doc. 1, paragraph 93.

[6]Doc. 1, paragraphs 88-89.

The Court previously found that Defendants were not entitled to summary judgment on Plaintiff's claim that the Defendants were deliberately indifferent to his serious medical needs in the treatment of his left wrist because the Court was of the opinion that a delay in treating Plaintiff's injuries could constitute deliberate indifference, provided that Plaintiff could show that he had a serious medical need. (Doc. 75).  In Estelle v. Gamble, 429 U.S. 97 (1976),  the Supreme Court held that deliberate indifference to an inmate's serious medical needs violates the Eight Amendment prohibition against cruel and unusual punishment.  A serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994) (quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)).

The record before the Court does not establish that Plaintiff's injury, a possible small ganglion, is one that mandates treatment.[7]  Plaintiff does not dispute the fact that there is no treatment for a possible small ganglion.  The Court concludes that Defendants are entitled to summary judgment on this claim because Plaintiff has failed to demonstrate he suffered from a serious medical need.  Further, Plaintiff

---

[7] "The primary treatment of a ganglion cyst is to wait and watch if it changes or simply disappears. I am unaware of any substantial risk of serious harm which could result if a small ganglion cyst was unattended to by medical professionals.  I am unaware in any serious risk of harm to the Plaintiff's health from a delay in receiving medical attention for a small ganglion of less than two weeks."  Doc. 97-9, Declaration of Dr. Mark Tidwell, paragraph 12.

does not allege or present competent summary judgment evidence that any named Defendant is responsible for an alleged denial of pain medication.  Defendants are entitled to summary judgment on Plaintiff's claim that the Defendants were deliberately indifferent to his serious medical needs in denial of pain medication.

## Due Process Claim

As part of his criminal judgment imposed in the United States District Court for the Eastern District of Wisconsin, Plaintiff was assessed court fees in the amount of $150.  Plaintiff alleges that his Fifth Amendment Right to due process was violated "when defendants took the monetary property of plaintiff through deception and trickery for their own objectives, rather than forwarding to the court."

The Bureau of Prisons financial responsibility records for Plaintiff clearly show that payments in the amount of $25 were withdrawn from Plaintiff's inmate account and sent to the federal building in Milwaukee, Wisconsin.[8]  Upon further consideration, the Court is of the opinion that this claim should have been brought under the Federal Tort Claims Act.  Further, the Defendants named in this action could not have participated in Plaintiff's allegations, as these allegations concern events that supposedly transpired 1992-1998, before his arrival at Coleman. Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's claim that his due process rights were violated when his prison funds were

---

[8] See Doc. 36, Ex. 13.

8

misappropriated.

## Conclusion

For the reasons set forth in this Order, the Defendants' Second Motion for Summary Judgment  (Doc.  97 ) is    **GRANTED.**  The Clerk shall terminate all pending motions and enter judgment accordingly.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 30th  day of March 2006.

UNITED STATES DISTRICT JUDGE

c:   Ernest Franklin Clark
     Counsel of Record